# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DON ALBERT PAYNE *et al.*,                    )
                                              )
      Plaintiffs,                         )
                                              )
      v.                                  )      Civil Action No.   21-1571 (RC)
                                              )
THOMAS J. VILSACK *et al.*,                   )
                                              )
                                              )
      Defendants.                         )

## <u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Plaintiff Don Albert Payne and his mother Gloria Jean Payne have sued in their official capacities U.S. Secretary of Agriculture Thomas J. Vilsack and Director Roberto Contreras of the Civil Rights Division of USDA's Food and Nutrition Service (FNS).   Pending before the Court is Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Plaintiffs' Cross-Motion for Summary Judgment under Rule 56.   For the reasons explained below, Defendants' motion is granted, and Plaintiffs' motion is denied as moot.

## II.   BACKGROUND

For current purposes, the factual allegations are accepted as true.   Plaintiffs reside in San Antonio, Texas.   Don Payne and his brother Darrell, who is not a party to this action, receive benefits under the Supplemental Nutrition Assistance Program (SNAP) administered by the Texas Health and Human Services Commission ("THHSC").[1]   Allegedly, Plaintiffs suffered

---

[1]  Gloria Jean Payne is a "live-in-aide . . . essential to" Darrell Payne's "care and wellbeing."   Am. Compl. ¶ 10.   The record does not establish Darrell as a "minor or an incompetent person" and Gloria as his "duly appointed representative."   Fed. R. Civ. P. 17(c).   Thus, this case is prosecuted in the names of Don Albert Payne and Gloria Jean Payne, who as *pro se* parties must "plead and conduct their own cases personally[.]" 28 U.S.C. § 1654.

"adverse effects" from the state agency's untimely processing of Darrell's benefits in 2019 and

Don's benefits in 2022.    Am. Compl. ¶¶ 23, 25, ECF No. 40-1.

       In a letter addressed to both FNS and THHSC dated February 18, 2021, Don Payne stated

that the Texas Commission "has not been complying with federal law," and "the same could be

said about [that agency's] Medicaid program."    Am. Compl. Ex. B, ECF No. 40-1 at 42-43.

Mr. Payne elaborated on his problems with the Medicaid program "evident since he was 21 years

of age and continu[ing] indefinitely." *Id*. at 43.    He sought "to permanently require the Texas

agency to adhere to the time-frame requirements set by federal law for processing applications

and providing food stamps to eligible households."    *Id*.    Mr. Payne also asked that "the

Intellectual and Developmental Disabilities Ombusman . . . identify [his] Medicaid complaints

open longer than 10 days" and explain why they had not been acted upon.    *Id*.    Finally, Mr.

Payne claimed that "he is being harassed and/or retaliated against for his research in opposition

to THHSC's errors and inaccuracies."    *Id*. at 44.

       In a letter to Mr. Payne dated March 29, 2021, FNS stated that it could "only comment on

issues related to SNAP."    Am. Compl., Ex. C, ECF No. 40-1 at 46.    It explained that while it

"oversees SNAP on the Federal Level," it does not "handle or have access to individual case

files" nor "process fair hearing requests."    *Id*.    The letter informed that because "State agencies

and their local offices are responsible for receiving applications, determining eligibility, and

administering benefits," Mr. Payne's "concerns" were forwarded "to the FNS Southwest

Regional Office" with a request "to contact the State regarding your fair hearing request."    *Id*.

It also informed that the local hearing authority must "comply with Federal law and regulations"

and "SNAP clients may appeal a local level hearing decision to a State level review or hearing."

*Id*.   Plaintiffs' exhibits show that the Texas authority in fact conducted a hearing on the alleged delayed processing of Mr. Payne's SNAP benefits and ultimately certified his household for benefits through June 2025.   *See* Exs. G-I, ECF No. 40-1 at 52-61.   The Hearing Officer "confirmed" that Mr. Payne's access to his benefits was delayed by three days "due to the untimely processing of his application," *id*. at 60, but also determined that Mr. Payne "had no break in service between recertification months" and "no proration of benefits or loss of benefits for the approved recertification period," *id*. at 58.

By letter dated April 6, 2021, FNS's Civil Rights Division ("Division") acknowledged Mr. Payne's complaint received on March 25, 2021, alleging discrimination in the administering of the SNAP program.   Am. Compl., Ex. D, ECF No. 40-1 at 48.   The letter informed Mr. Payne that no further action could be taken without additional information.   He was told to "explain as clearly as possible what happened" with regards to his SNAP benefits and "the date(s) of the discriminatory event(s)."   *Id*.   The letter warned: "**unless we receive this information within 20 days of the date of this letter, we cannot take action and will close your complaint,** and it included as an enclosure "a postage paid envelope for your use in returning the requested information." *Id*. (emphases in original).    The Division further explained that it "does not have the authority to investigate part of your complaint because the issues you raise concerning Medicare and Medicaid are not within the jurisdiction of our agency."[2]   *Id*. at 49.

---

[2]   *See Payne v. Becerra*, No. 22-cv-00869 (RC), 2023 WL 3376630, at *5 (D.D.C. May 11, 2023) (dismissing Mr. Payne's Medicaid/Medicare claims).

Allegedly, "both plaintiffs immediately responded with additional information as required."   Am. Compl. ¶ 5 (citing U.S. Postal Service tracking number "confirming USDA receipt April 19, 2021 @ 2:35 p.m.").   But by letter dated May 13, 2021, the Division informed Mr. Payne that it was not "able to investigate [his] complaint" because he failed "to cooperate with [the] investigation" by providing the information requested in the April 6, 2021 letter.   Ex. E, ECF No. 40-1 at 50.   The letter further informed that FNS had closed the case and would "take no further action."   *Id*.   It provided Mr. Payne a telephone number and an address if he had "any questions regarding this letter."   *Id*.   One month later, on June 9, 2021, Plaintiffs filed this civil action.

In the operative Amended Verified Complaint for Declaratory and Injunctive Relief, Plaintiffs state that "this case represents a single and narrow purpose," *i.e.*, "[t]o further explore whether Plaintiffs' claim that the USDA failed to investigate their civil rights complaints" is reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").   Am. Compl. at 3 ¶ 1.   In addition to the APA claim, *id*. ¶¶ 43-53 (Count 1), Plaintiffs seek relief for alleged ultra vires action, *id*. ¶¶ 54-58 (Count Two), and Fifth Amendment procedural due process violations, *id*. ¶¶ 59-65 (Count 3).

### III.   LEGAL STANDARD

Under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, courts must dismiss any claim over which they lack subject-matter jurisdiction.   Rule 12(b)(6), by contrast, requires courts to dismiss any claim upon which relief could not be granted even if jurisdiction was proper.   Fed. R. Civ. P. 12(b)(6).   When Rules 12(b)(1) and 12(b)(6) are invoked together, as they are here, a court must first address the issues encompassed by Rule 12(b)(1), as those

4

issues implicate the court's ability to hear the case.   *See Lovitky v. Trump*, 949 F.3d 753, 763 (D.C. Cir. 2020) ("[W]hen a court lacks subject-matter jurisdiction . . . it has no authority to address the dispute presented.") (internal quotation marks and citation omitted)).

It is the plaintiff's burden to establish that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).   To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."   *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).   As part of a court's obligation to construe *pro se* filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and absent undue prejudice to a party, "all factual allegations by a *pro se* litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss," *Hill v. Smoot*, 308 F. Supp. 3d 14, 19 (D.D.C. 2018) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).   While *pro se* pleadings are held to a "less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), *pro se* plaintiffs must still comply with the Federal Rules of Civil Procedure and the Court may not assume the role of the plaintiff's advocate.   *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987); *Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[I]t is not the Court's job to canvass the record for documents supporting a *pro se* party's position.").

## IV.   DISCUSSION

Defendants argue, among other grounds for dismissal, that the Court lacks subject-matter jurisdiction.   *See* Defs' Mem. at 8-11.   The Court agrees.

5

Article III of the U.S. Constitution limits federal courts' jurisdiction to particular "cases" and "controversies." U.S. Const. Art. 3, § 2, cl. 1.   The Supreme Court has consistently explained that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies."   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).   Together, the doctrines of standing, ripeness, and mootness serve a common purpose: to ensure that federal courts resolve only "Cases" and "Controversies" within the meaning of the Constitution.   U.S. Const. art. III, § 2.

"The 'irreducible constitutional minimum' for standing is (i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision."   *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   In other words, to establish standing as a constitutional matter, a plaintiff must "demonstrate the existence of a 'personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).   To show an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."   *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted); *see, e.g.,* 5 U.S.C. § 702 (restricting APA review to "[a] person *suffering legal wrong* because of agency action, or *adversely affected or aggrieved by*

6

*agency action* within the meaning of a relevant statute") (emphases added)).   The APA

"empowers a court only to compel an agency to perform a ministerial or non-discretionary act."

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Plaintiffs' three claims, to the extent intelligible, arise from the Division's decision to

close Mr. Payne's discrimination complaint due to insufficient information to enable an

investigation.   As set out above, Mr. Payne was forewarned of that consequence and was given a

reasonable time of 20 days to "clearly" explain "what happened" with regard to the SNAP

benefits and "the date(s) of the discriminatory event(s)."   The assertion that Plaintiffs timely

replied with "a number of additional documents," Pls.' Reply-Back, ECF No. 50 at 2, is

untenable.[3]   The proffered U.S. Postal Service receipt gives only an "estimated" delivery date of

April 19, 2021, and it includes a caveat that the Postal Service "is experiencing unprecedented

volume increases and limited employee availability due to the impacts of COVID-19."[4]   Pls.'

Ex. A, ECF No. 40-1 at 41.   It is not proof that the "additional documents" were delivered on

that date, or at all.   *Cf. id. with* Pls.' Ex. B, ECF No. 40-1 at 45 (USPS Domestic Return Receipt

establishing March 1, 2021 delivery date of SNAP benefits complaint mailed February 19,

2021).   Furthermore, Mr. Payne does not claim to have followed the advice in the case closing

letter to contact the Division, which may have triggered "legally *required*" action, *Norton*, 542

---

[3]   Even if the documents were received, they sorely lack the clarity and brevity the Division requested to initiate an investigation.   *See* ECF No. 40-1 at 33-44.

[4]   The handwritten notation on the receipt purporting to show a time and date of delivery is unauthenticated and thus unreliable.

U.S. at 63 (emphasis in original), beyond that already performed.[5] Ms. Payne has asserted no claims of her own. Therefore, neither Plaintiff has satisfied the requirements for Article III standing, and "the defect of standing is a defect in subject matter jurisdiction."[6] *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

Even if the Court were to assume that the agency erroneously closed Mr. Payne's discrimination complaint, his claim would fail under Rule 12(b)(6) analysis. Congress has explicitly excepted from APA review "agency action [that] is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), which generally includes "an agency's refusal to institute proceedings," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). "[I]in cases that involve agency decisions not to take enforcement action," courts "begin with the presumption that the agency's action is unreviewable[.]" *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011); *see Borg-Warner Protective Servs. Corp. v. U.S. E.E.O.C.*, 81 F. Supp. 2d 20, 28 n.5 (D.D.C. 2000), *aff'd sub nom. Borg-Warner Protective Servs. Corp. v. E.E.O.C.*, 245 F.3d 831 (D.C. Cir. 2001) (There is a presumption that "an agency's decision not to prosecute or enforce" is unreviewable under the APA," which "Borg-Warner has not in any way rebutted").

To rebut the presumption against judicial review, Plaintiffs must point to a "substantive statute" that provides specific "guidelines for the agency to follow in exercising its enforcement

---

[5]    Plaintiffs' "failure to act" theory, Am. Compl. at 1-2, is disproven first by the Division's timely response to the discrimination complaint and, second, by its follow-up letter plausibly explaining why the complaint was closed.

[6]    To the extent that the prolix complaint includes a separate claim based on the delay in Mr. Payne's receipt of SNAP benefits, the Court agrees that Mr. Payne lacks standing to sue the federal defendants because as noted *supra* at 2-3, the administering of the SNAP program lies exclusively with the states. Defs' Reply, ECF No. 48 at 6; *see* 7 U.S.C. §§ 2020 *et seq*. (Administration of SNAP Act).

powers."[7] *Sierra Club*, 648 F.3d at 855 (quoting *Chaney*, 470 U.S. at 832-33); *but cf. Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 184 (D.D.C. 2018) (a Title VII plaintiff "does not have a cause of action against" a federal agency's civil rights office "for alleged deficiencies in the processing or mishandling of a discrimination complaint") (examining *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam) (other citations omitted)); *Brown v. Berrein*, 923 F. Supp. 2d 43, (D.D.C. 2013) (citing cases holding same).   This is so because "§ 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based[.]"   *Webster v. Doe*, 486 U.S. 592, 600 (1988)).   Plaintiffs have identified no such statute.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss, denies Plaintiffs' motion for summary judgment, and dismisses the case.   A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge

Date: September 21, 2023

---

[7] *But see Sierra Club*, 648 F.3d at 855 (clarifying that "if the statute in question does not 'give any indication that violators must be pursued in every case, or that one particular enforcement strategy must be chosen over another' and if it provides no meaningful guidelines defining the limits of the agency's discretion, then enforcement is committed to the agency's discretion.") (citations omitted)).